UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE LIFE INSURANCE CO.,

        Plaintiff,

v.

BRANDON SCOTT SHAW, LOREN C.
ZOLMAN, as Personal Representative of
the ESTATE OF BARBARA J. MARCUM,

        Defendants.
_____/    Civil Case No. 15-11761
                                                                    Honorable Linda V. Parker

LOREN C. ZOLMAN,

        Cross-Plaintiff,

v.

BRANDON SCOTT SHAW and KIM LOUISE
SHAW,

        Cross-Defendant/Third-Party Defendant.
_____/

BRANDON SCOTT SHAW**,**

        Counter-Plaintiff,

v.

ALLSTATE LIFE INSURANCE CO.,

        Counter-Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS DEFENDANT SHAW'S COUNTERCLAIM, FOR ENTRY OF FINAL DECREE OF INTERPLEADER, AND FOR AN AWARD OF FEES AND COSTS**

Allstate Life Insurance Company ("Allstate") brought this interpleader action pursuant to 28 U.S.C. § 1335 against Defendant Brandon Scott Shaw ("Shaw") and Loren C. Zolman, as Personal Representative of the Estate of Barbara J. Marcum ("Zolman"), to resolve competing claims to benefits on a life insurance policy held by Barbara J. Marcum ("Decedent"). In addition to the cross-claims filed by Shaw and Zolman, Shaw has filed a counterclaim against Allstate alleging breach of the insurance policy by refusing to pay benefits to Shaw in a timely manner and bad faith conduct entitling Shaw to a twelve percent (12%) penalty pursuant to Michigan Compiled Laws § 500.2006(4). Presently before the Court is Allstate's motion to dismiss Shaw's counterclaim, for entry of final decree of interpleader, and for an award of fees and costs. (ECF No. 19.) Only Shaw has responded to Allstate's motion. (ECF Nos. 20, 21.) Allstate filed a reply brief on October 14, 2015. (ECF No. 23.) Finding the facts and legal arguments sufficiently presented in the parties' pleadings, the Court is dispensing with oral argument with respect to Allstate's motion pursuant to Eastern District of Michigan Local Rule 7.1(f).

**Factual and Procedural Background**[1]

On or about October 17, 2002, Decedent applied for conversion of Allstate Protector Plus Term Life Insurance Policy No. 763565423R issued by Allstate to Allstate's Universal Life Premiere Life Insurance Policy No. 794 922 143 with a face amount of $25,000 ("Policy"). (ECF No. 1, Ex. A.) Decedent named her husband as the beneficiary under the Policy. (*Id*. at Pg ID 31.)

In 2004, Decedent designated her brother Ralph A. Zolman as primary beneficiary of the Policy benefits, and her niece, Shannon Marie Wheatcropt, as contingent beneficiary. In 2007, Decedent changed the contingent beneficiary to her sister-in-law, Linda Zolman. Then in April 2009, Decedent designated her brother, Ralph A. Zolman, and Shaw as primary beneficiaries in equal shares. A month later, however, she changed the primary beneficiary to her brother, Ralph A. Zolman, only, and designated Shaw as contingent beneficiary.

Finally, on October 20, 2009, Decedent designated Shaw as primary beneficiary and Third-Party Defendant Kim Louise Shaw, Shaw's mother, as contingent beneficiary. (ECF No. 1, Ex. B.) Shaw indicates that Kim Shaw lived across the street from Decedent for over twenty-five years.

---

[1] Except where noted, these facts are agreed to by Allstate and Shaw as reflected in their pleadings and/or briefs.

Decedent died on February 7, 2015. Approximately three years earlier, Defendant Loren Zolman, a second brother of Decedent, moved in to live with Decedent. Decedent was a widow at the time of her death and had no children. Under the terms of the Policy, and on account of Decedent's death, Allstate was obligated to pay the death benefit due under the Policy in the total amount of $25,000.

On February 11, 2015, Allstate sent correspondence to Shaw, explaining that to claim the death benefits, he needed to fill out and return a Claimant's Statement, provide a certified death certificate, and the Policy. Shaw completed the Claimant's Statement, which he dated February 17, 2015, and sent to Allstate along with a certified death certificate. Shaw informed Allstate that the original Policy was in Zolman's possession.

On February 20, 2015, Allstate received facsimile correspondence from agent Rob Montgomery, forwarding a letter from Attorney Richard T. Urbis on behalf of Zolman. (ECF No. 1, Ex. D.) In the letter, Attorney Urbis indicates that Zolman had retained him in regard to the settlement of Decedent's estate and affairs. (*Id.* at Pg ID 42.) Attorney Urbis states that Zolman is named as the Personal Representative of Decedent's estate in Decedent's estate planning documents. (*Id.*) He further states that "[t]he purpose of this communication is to provide notice that the estate objects to the payment of any death benefits until the

interests of the parties have been decided by the Oakland County Circuit and/or Probate Court." (*Id*.) Attorney Urbis asserts: "We presently have reason to believe that the death benefits under the policy will be subject to set off for property and funds improperly removed from [Decedent]'s estate by the named beneficiary or by others in concert with him." (*Id*.)

Allstate responded to Attorney Urbis, in a letter dated March 10, 2015, requesting "the specific legal basis for your objection to the beneficiary designation, including any supporting documentation that [he] think[s] [Allstate] should take into consideration." (ECF No. 1, Ex. F.) On the same date, Allstate sent a letter to Shaw, informing him "that there is a potential challenge to the beneficiary designation" and that Allstate had "requested that [the other party] provide their legal basis in writing." (*Id*., Ex. E.) According to the letter, Allstate communicated this information to Shaw by telephone the day before. (*Id*.)

In a letter to Allstate dated April 7, 2015, Attorney Urbis states the following:

> This will confirm today's telephone conversation during which I advised you that as attorney for the heirs of Barbara Jean Marcum I intend to commence a lawsuit in the Oakland County Circuit Court against Brandon S. Shaw for collusion, conspiracy, undue influence, conversion and theft among other causes of action. Mr. Marcum's estate planning attorney has provided background information which establishes that the wishes of Ms. Marcum, including the disposition of the above-referenced insurance proceeds, have been intentionally violated. Moreover, the value of the claims against Brandon S. Shaw and other acting in concert with him are expected to exceed the death

benefit policy proceeds.  Accordingly, we intend to request an interim order for the preservation of the insurance funds while the matter is litigated and anticipate a future request for the payment of the funds into a court escrow account.

(ECF No. 1, Ex. G.)  In light of the competing claims to the Policy benefits, Allstate filed this interpleader action on May 18, 2015.

In his Counter-Complaint against Allstate filed August 19, 2015, Shaw disputes that Zolman has any valid claim to the proceeds of the Policy.  (ECF No. 16.)  Shaw points out that Zolman (as opposed to his and Decedent's brother Ralph Zolman) has never been named as a beneficiary under the policy.  (*Id.*)  Shaw contends that Allstate improperly relied on Attorney Urbis' unsubstantiated assertions to conclude that there are competing claims to the Policy benefits and that Allstate failed to perform a proper investigation to verify those assertions.  (*Id.*)  Shaw indicates that a search of the Oakland County Probate Court and Oakland County Circuit Court records reveals that no action has been opened concerning Decedent's estate, Zolman has never been appointed Decedent's personal representative, and no order enjoining Allstate from paying the Policy benefits to Shaw has ever been entered.  (*Id.*)  For these reasons, and because the Policy states that benefits are to be paid on the earlier of the day Allstate received proof of the insured's death or the fifteenth day after the insured's death, Zolman alleges that Allstate has acted in bad faith and thus he is entitled to prejudgment penalty interest of twelve percent under Michigan Compiled Laws § 500.2006(4).

**Standard of Review**

Allstate seeks to dismiss Shaw's Counter-Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading

7

stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

## Applicable Law and Analysis

"Interpleader is an equitable proceeding that 'affords a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding.' " *United States v. High Tech. Prods., Inc.*, 497 F.3d 637, 641 (6th Cir. 2007) (quoting 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1704 (3d ed. 2001)).[2] As the

---

[2] *High Technology Products* was an interpleader action brought pursuant to Federal Rule of Civil Procedure 22. 497 F.3d at 640. As the Sixth Circuit explained in that case, however, "interpleader may be invoked in the federal courts via Rule 22 or via the Interpleader Act, 28 U.S.C. § 1335." *Id.* at n.1. As the court further explained, the same principles apply to both rule and statutory interpleader, with the exception of subject matter jurisdiction, venue, service of process, and anti-injunction limitations. *Id.*; *see also Mudd v. Yarbrough*, 786 F. Supp. 2d 1236, 1241-42 (E.D. Ky. 2011) (explaining the distinctions between rule and statutory interpleader).

Sixth Circuit outlined in *High Technology Products*, there typically are two stages in an interpleader proceeding:

> During the first stage, the court determines whether the stakeholder has properly invoked interpleader, including whether the court has jurisdiction over the suit, whether the stakeholder is actually threatened with double or multiple liability, and whether any equitable concerns prevent the use of interpleader. 7 Wright, Miller, & Kane, supra, at § 1714. During the second stage, the court determines the respective rights of the claimants to the fund or property at stake via normal litigation processes, including pleading, discovery, motions, and trial. *Id*.

497 F.3d at 641. Once the court concludes that interpleader is available, it typically: (a) orders the stakeholder to deposit with the court the fund or property at issue; (b) discharges the stakeholder if it is a disinterested party; (c) enjoins the parties from prosecuting any other proceeding related to the fund or property; and (d) directs the claimants to litigate their claims to the property or fund at issue. *Id*. at 641-42; *see also* 7 Wright et al., *supra*, at § 1714.

" 'The primary test for determining the propriety of interpleading the adverse claimants and discharging the stakeholder . . . is whether the stakeholder legitimately fears multiple vexation directed against a single fund or property.' " *High Tech. Prods.*, 497 F.3d at 642 (quoting 7 Wright et al, *supra*, at § 1704) (brackets removed). "The Sixth Circuit's requirement of a 'legitimate' fear of overlapping litigation does not imply review of the merits of the adverse claims, which should instead be reserved for the second-stage of interpleader." *Mudd v.*

9

*Yarbrough*, 786 F. Supp. 2d 1236, 1240-41 (E.D. Ky. 2011) (citing 7 Wright et al., *supra*, at § 1704; *John Hancock Mut. Life Ins. Co. v. Kraft*, 200 F.2d 952, 954 (2d Cir.1953) ("In an interpleader action, the jurisdiction of the court is not dependent on the merits of the claims of the defendants")). "Instead, the Sixth Circuit has found this requirement satisfied where multiple claimants present competing claims for the same identifiable products." *Mudd*, 786 F. Supp. 2d at 1241-42 (citing *High Tech. Prods.*, 497 F.3d at 642). "[I]t is immaterial whether the stakeholder believes that all claims against the fund are meritorious. Indeed, in the usual case, at least one of the claims will be quite tenuous." 7 Wright et al., *supra*, at § 1704 (footnotes omitted).

>As one district judge in this Circuit has noted:
>
>There is no requirement in Section 1335 that the party filing a statutory interpleader action perform any kind of investigation, let alone reach a level of investigation or due diligence that satisfies one of the competing claimants. To the contrary, it is precisely the purpose of an interpleader action to remove the holder of the proceeds from the equation and allow a neutral third party to make determinations as to who is actually entitled to payment. Put simply, Congress has made filing an interpleader without further investigation a statutory opportunity for a party that legitimately faces multiple adverse claims directed against a single fund (and thus fears potential double liability resulting from a decision as to which party is the meritorious claimant).

*Jackson Nat'l Life Ins. Co. v. Poole*, No. 3:14-CV-1924, 2015 WL 276632, at *4 (M.D. Tenn. Jan. 22, 2015) (unpublished opinion). Several Circuit Courts similarly have concluded: " 'Jurisdiction in interpleader is not dependent upon the

merits of the claims of the parties interpleaded, and a plaintiff can maintain the action even though he believes that one of the claims is valid and the other, or others, without merit.' " *Lexington Ins. Co. v. Jacobs Indus. Maint. Co.*, 435 F. App'x 144, 147 (3d Cir. 2011) (quoting *Bierman v. Marcus*, 246 F.2d 200, 202 (3d Cir. 1957)); *see also Hunter v. Fed. Life Ins. Co.*, 111 F.2d 551 (8th Cir. 1940) (stakeholder, acting in good faith, could maintain suit in interpleader for purpose of ridding himself of vexation and expense of resisting adverse claims, even though he believed that only one of them was meritorious).

 Here, Allstate unquestionably was faced with competing claims from Shaw and Zolman to the Decedent's death benefit. Shaw filed a claim for the proceeds. Zolman, through counsel, wrote to Allstate asserting that the death benefits will be subject to set off due to improper conduct by Shaw and others acting in concert with him and that information establishes that the Decedent's wishes, including the disposition of the insurance proceeds, were intentionally violated. Allstate was not obligated to investigate Zolman's claim to independently determine whether he, rather than Shaw, was entitled to the death benefit. Zolman's claim was not "so wanting in substance[,]" *Bierman*, 246 F.2d at 202, or "plainly frivolous[,]" *Travelers Ins. Co. v. Johnson*, 579 F. Supp. 1457, 1460 (D.N.J. 1984), to render fanciful or illegitimate Allstate's "fear of the vexation and hazard of conflicting

claims." The Court concludes that this is exactly the type of situation in which an interpleader action is appropriate.

When an interpleader is properly asserted, counterclaims seeking payment of the interpleaded funds and asserting liability against the stakeholder for failing to choose one claimant over another generally are disallowed. *See, e.g., Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 263-64 (3d Cir. 2009) (holding that "where a stakeholder is allowed to bring an interpleader action, rather than choosing between adverse claimants, its failure to choose between the adverse claimants (rather than bringing an interpleader action) cannot itself be a breach of a legal duty."); *Daniels v. Equitable Life Assurance Soc. of the U.S.*, 335 F.3d 210, 214-15 (5th Cir. 1994) (where an interpleader is found proper, breach of contract and tort claims are collaterally estopped); *Lutheran Bhd. v. Comyne*, 216 F. Supp. 2d 859, 862 (E.D. Wis. 2002) (holding that the bringing of a valid interpleader action shields a plaintiff from liability for counterclaims where those "counterclaims are essentially based on the plaintiff's having opted to proceed via interpleader complaint rather than having chosen from among competing adverse claimants"); *Metro. Life Ins. Co. v. Barretto*, 178 F. Supp. 2d 745, 748 (S.D. Tex. 2001) (holding that interpleader protection extends to counterclaims that arise from "utilizing the protections afforded by the interpleader"). As the Third Circuit Court of Appeals explained in *Hovis*: "To allow [the stakeholder] to be exposed to

liability under these circumstances would run counter to the very idea behind the interpleader remedy- namely, that a 'stakeholder should not be obliged at his peril to determine which claimant has the better claim.' " 553 F.3d at 265 (quoting *Bierman*, 246 F.2d at 202). Thus "where a stakeholder is blameless with respect to the existence of the ownership controversy, the bringing of an interpleader action protects it from liability to the claimants both for further claims to the stake and for any claims directly relating to [the stakeholder's] failure to resolve that controversy." *Id*.

Importantly, the nature of the counterclaims must be considered in deciding whether they are precluded by the interpleader action. This is because interpleader does not shield the stakeholder from claims which are "truly independent" of the underlying dispute over entitlement to the funds or property at issue. *See Hovis*, 553 F.3d at 264-65. For example, in *Lee v. West Coast Life Insurance Co.*, 688 F.3d 1004 (9th Cir. 2012), the court refused to dismiss the counterclaim alleging negligence of the stakeholder based on the insurer having botched the handling of the insured's change of beneficiary forms, thus leading to the adverse claims to the insurance proceeds. *Id*. at 1007, 1012. Thus the interpleader device is not "an all-purpose get-out-of-jail-free card." *Hovis*, 553 F.3d at 265. But it does shield the stakeholder from liability based on its failure to resolve the controversy over entitlement to the stake in one claimant's favor. *Id*.

13

Here, Shaw's Counter-Complaint against Allstate falls squarely within the zone of claims that the courts have identified as inconsistent with interpleader relief. None of the facts alleged in Shaw's Counter-Complaint suggest that Allstate is responsible for the existence of the ownership controversy. In other words, the facts alleged by Shaw do not identify any conduct by Allstate creating or causing the adverse claims to the life insurance proceeds. Instead, Shaw's claims are premised only on his contention that Allstate's recognition of Zolman's competing claim to the death benefits and delay in paying out those benefits to Shaw are wrongful. As such, the Court agrees with Allstate that Shaw's Counter-Complaint is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).

In addition to asking the Court to find that this is a proper interpleader action and dismiss Shaw's counterclaims against it, Allstate seeks an award of attorneys' fees and costs. While the interpleader statute does not provide for such an award, the general rule followed by the Sixth Circuit Court of Appeals is that " 'a federal court has discretion to award costs and counsel fees to the stakeholder in an interpleader action . . . whenever it is fair and equitable to do so.' " *Holmes v. Artists Rights Enforcement Corp.*, 148 F. App'x 252, 259 (6th Cir. 2005) (unpublished opinion) (quoting 7 Wright et al., *supra*, at § 1719) (brackets removed). In *Holmes*, the Sixth Circuit advised that "[a]n interpleading party is

entitled to recover costs and attorney's fees when it is (1) a disinterested stakeholder, (2) who has conceded liability, (3) has deposited the disputed funds into court, and (4) has sought a discharge from liability." *Id*. (citing *Septembertide Publ'g v. Stein and Day*, 884 F.2d 675, 683 (2d Cir. 1989)). Notwithstanding the satisfaction of these criteria, "reasonableness" is a limiting factor for any award and it is within the court's discretion to determine what award, if any, is appropriate. *Id*. (citing 7 Wright et al., *supra*, § 1719.)

Moreover, courts have acknowledged an exception to the allowance of interpleader fee and cost awards. *See, e.g., In re Mandalay Shores Coop. Hous. Ass'n Inc.*, 21 F.3d 380, 383-84 (11th Cir. 1994) (concluding that "attorneys' fees are not warranted . . . when a stakeholder's interpleader claim arises out of the normal course of business."); *Unum Life Ins. Co. of Am. v. Kelling*, 170 F. Supp. 2d 792, 795 (M.D. Tenn. 2001) ("Competing claims arise during the normal course of [insurance] business and the cost of doing such business should not be transferred to the insured."); *Aetna U.S. Healthcare v. Higgs*, 962 F. Supp. 1412, 1414-15 (D. Kan. 1997) (where interpleader plaintiff is "in the business of distributing proceeds from insurance policies . . . plaintiff should [not] be permitted to shift the cost of distributing the proceeds in this case to someone else"); *Sun Life Assurance Co. of Canada v. Thomas*, 735 F. Supp. 730, 733 (W.D. Mich.1990) (denying insurance company's claims for fees and costs, reasoning that "courts are

15

reluctant to award fees in cases where the claims are of the type that arise in the ordinary course of the stakeholder's business"); *Companion Life Ins. Co. v. Schaffer*, 442 F. Supp. 826, 830 (S.D.N.Y. 1977) (rejecting insurance company's attempt to shift to claimants costs arising from "inevitable and normal risks of the insurance business" based on conflicting claims to a policy). As outlined by the District Court for the Middle District of Tennessee in *Kelling*, there are three separate justifications asserted by courts for exercising their discretion to exclude insurance companies from the general rule regarding fees and costs in an interpleader action. 170 F. Supp. 2d at 794-96.

"First, courts have found . . . that insurance companies should not be compensated merely because conflicting claims to the proceeds have arisen during the normal course of business." *Kelling*, 170 F. Supp. 2d at 794 (citing *Thomas*, 735 F. Supp. at 732 ; *Prudential v. Baton Rouge*, 537 F. Supp. 1147, 1150-51 (M.D. Ga. 1982); *Minnesota Mut. Life Ins. Co. v. Gustafson*, 415 F. Supp. 615, 617-19 (N.D. Ill. 1976)). Second, courts have declined to follow the general rule where the stakeholder is an insurance company, reasoning that "insurance companies, by definition, are interested stakeholders and that filing of the interpleader action immunizes the company from further liability under the contested policy." *Id*. (citing *Prudential*, 537 F. Supp. at 1150-51; *Western Life Ins. Co. v Nanney*, 290 F. Supp. 687, 688 (E.D. Tenn. 1968); *Cogan v. United*

*States*, 659 F. Supp. 353, 354 (S.D. Miss. 1987)). Lastly, "some courts have exempted insurance companies from the general rule based on the policy argument that such an award senselessly deplete the fund that is the subject of the preservation through the interpleader." *Id*. at 795 (citing *Paul Revere Life Ins. Co. v. Riddle*, 222 F. Supp. 867, 868 (E.D. Tenn. 1963); *Metro. Life Ins. Co. v. Jordan*, 221 F. Supp. 842, 844 (W.D.N.C. 1963); *Hunter v. Fed. Life Ins. Co.*, 111 F.2d 551, 556 (8th Cir. 1940); *Trustees of Directors Guild of Am. Producer Pension Benefit Plans v. Tise*, 234 F.3d 415, 426 (9th Cir. 2000)).

All three reasons counsel against an award of attorneys' fees and costs to Allstate. This interpleader action- a dispute between conflicting claimants- falls within the ordinary course of business for a life insurance company and Allstate is capable of allocating such costs among its policyholders. Allstate requests not only that it be dismissed from this action, but also that the Court discharge it from any further liability. Finally, the death benefits at issue amount to $25,000.00 (exclusive of interest), and any claim for attorneys' fees would seriously deplete the amount available under the terms of the policy to the rightful beneficiary.

Nevertheless, the Court does find that Allstate is entitled to a fee award to compensate it for having to defend against Shaw's Counter-Complaint. But the Court believes that it would be inequitable to deduct such an award from the Policy benefits if Zolman ultimately is determined to be the rightful claimant to those

benefits. As such, the Court is denying without prejudice Allstate's request for an award of its fees and costs. Allstate may renew its motion if the Court ultimately concludes that Shaw is entitled to the insurance proceeds. In the event such a request is renewed, Allstate should seek only those fees and costs associated with having to defend against Shaw's Counter-Complaint.

## Conclusion

For the reasons set forth above, the Court finds that this is an appropriate interpleader filed by a disinterested stakeholder and that Allstate, having already deposited the insurance proceeds with the Court, should be allowed to withdraw from the proceedings. Shaw's Counter-Complaint against Allstate fails to state a claim upon which relief may be granted and therefore is dismissed with prejudice. The Court is denying without prejudice Allstate's request for its attorneys' fees and costs in bringing this interpleader action. If the Court ultimately holds that the insurance proceeds are payable to Shaw, Allstate may renew its request for an award of its attorneys' fees and costs incurred in having to defend against Shaw's Counter-Complaint.

Accordingly,

**IT IS ORDERED** that Allstate Life Insurance Company's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**;

**IT IS FURTHER ORDERED** that Brandon Scott Shaw's Counter-Complaint against Allstate Life Insurance Company is **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that Allstate Life Insurance Company is fully relieved of and discharged from any and all liability with respect to payment of the life insurance proceeds of Allstate Universal Life Premiere Life Insurance Policy No. 794 922 143 in the amount of $25,000, plus any applicable interest, payable under the Policy by reason of the death of the Decedent;

**IT IS FURTHER ORDERED** that Defendants are enjoined and restrained from instituting any other action in any state or United States court against Allstate Life Insurance Company for recovery of the insurance benefits or any portion thereof, plus any applicable interest, payable as a consequence of the death of the Decedent;

**IT IS FURTHER ORDERED** that Allstate Life Insurance Company is **DISMISSED WITH PREJUDICE** from this action, but it may later file a renewed motion for an award of attorneys' fees and costs under the conditions set forth above.

s/ Linda V. Parker<br>
LINDA V. PARKER<br>
U.S. DISTRICT JUDGE

Dated: April 26, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, April 26, 2016, by electronic and/or U.S. First Class mail.

                                              s/ Richard Loury
                                              Case Manager